**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
Telephone: (202) 280-4783
jkaliel@kalielpllc.com

**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| FERNANDA WARREN and ANDY FRAHER, on behalf of themselves and all others similarly situated, | Case No. 5:23-cv-05333-PCP |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| ZOOM VIDEO COMMUNICATIONS, INC, | **Judge: P. Casey Pitts** |
| Defendant. | |

1.    Plaintiffs Fernanda Warren and Andy Fraher ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendant Zoom Video Communications, Inc. ("Zoom") and allege the following:

### INTRODUCTION

2.    Plaintiffs bring this action on behalf of themselves, the general public, and a class of similarly situated consumers against Zoom, regarding its automatic renewal scheme with respect to Zoom subscriptions.

3.    Specifically, Plaintiff Warren alleges that Zoom fails to cancel subscription plans of subscribers that cancel their paid monthly subscription. Instead, Zoom continues to charge consumers unwanted monthly fees even after they attempt to cancel their membership. In so doing, Zoom systematically violates state automatic renewal laws, including those of California and Florida, by engaging in a pattern and practice of exploiting its members by continuing to charge them monthly fees, without consumers' consent, after they have canceled their memberships.

4.    Additionally, Plaintiff Fraher alleges that Zoom failed to send written notice to consumers concerning the renewal of their annual subscriptions, in violation of the automatic renewal laws of multiple states.

5.    On behalf of themselves and the proposed classes, Plaintiffs seek damages, restitution, statutory damages, attorneys' fees, and public injunctive relief, as set forth more fully below.

### PARTIES

6.    Plaintiff Fernanda Warren is a citizen and resident of Jupiter, Florida.

7.    Plaintiff Andy Fraher is a citizen and resident of Indian Trail, North Carolina.

8.    Defendant Zoom Video Communications, Inc. is a Delaware corporation with its principal place of business and headquarters in San Jose, California. Zoom is a supplier of video conferencing services founded in 2011 and is currently valued at over $67 billion.

### JURISDICTION AND VENUE

9.    This Court has original jurisdiction over this action because (1) the proposed classes are comprised of at least 100 members, (2) at least one member of the proposed class is a citizen of a state other than California, and (3) the aggregate claims of the putative class members exceed $5

AMENDED CLASS ACTION COMPLAINT

million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

10.     Venue is proper in the United States District Court for the Northern District of California because Zoom is subject to personal jurisdiction in the Northern District, because Zoom regularly conducts business in the Northern District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Northern District. 28 U.S.C. § 1391.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I.     OVERVIEW OF ZOOM

11.     Zoom provides a cloud-based communications platform for video and audio conferencing to both business and individual consumers throughout California and the United States. Zoom's products and services can be used across mobile devices, desktops, telephones, and room systems.

12.     Zoom offers different tiers of services for its registered users: Basic, Pro, Business, and Enterprise.  Subscription fees range from free for the Basic version, to $19.99 per month per user for the Enterprise version. While users receive additional features under more expensive subscriptions, Zoom's representations regarding its cancellation policy are common to all subscription levels.

13.     Zoom offers its subscription services as a monthly or annual plan. All plans automatically renew. For example, when the monthly plan ends, the customer is automatically renewed and charged for another month.

14.     Zoom has developed mobile apps to access its most popular service, Zoom meetings, for both the iPhone and Android. Zoom provides software to access Zoom meetings on a desktop computer for both Windows and Mac operating systems. Further add-ons, add-ins, plugins, and extensions are available for Microsoft Office 360, Outlook, Gmail, Firefox, Chrome, and Safari.

15.     Parties who host a Zoom meeting invite participants in one of two ways.  First, a host may utilize a Zoom feature whereby Zoom will link to the host's email account directly and provide a form email containing the URL for participants of the Zoom meeting to use, or by otherwise providing that URL for participants to enter into their web browser.

AMENDED CLASS ACTION COMPLAINT

16.     Alternatively, Zoom provides a telephone number and access code for participants who wish to call with a telephone as a voice-only participant.

17.     Users who have a Zoom app on their computer or cellphone are directed to that app after clicking on the URL. User who do not have the Zoom app are directed to a Zoom webpage where the meeting is hosted. Voice-only telephone users participate in the meeting as one would with a normal telephone conference call, i.e., without employing any app or webpage.

18.     In early 2020, usage of video conferencing increased even more dramatically in response to the coronavirus pandemic, and Zoom's usage surged higher. As of the end of December 2019, Zoom had a maximum number of 10 million daily meeting participants, both free and paid. In March 2020, Zoom reached more than 200 million daily meeting participants, both free and paid.

## II.     ZOOM REPRESENTS THAT ITS SUBSCRIPTIONS CAN BE CANCELLED VIA ONLINE WEB PORTAL, EMAIL, OR VIA PHONE.

19.     There are several ways to cancel a paid Zoom membership. One of those ways is via Zoom's web portal.  Ex. A. From there, users click on "Account Management", then "Billing". *Id.* Under the "Current Plans" tab, users are given the option to cancel the subscription. *Id*. From there, subscribers must again confirm that they want to cancel their subscription via a large orange button. Then consumers are asked why they would like to cancel the subscription before submitting the cancellation.

20.     Subscribers that purchased a subscription via a direct sales quote can cancel their subscription at the end of the subscription term indicated on their quote by reaching out to their Account Executive or renewals@zoom.us. *Id.*

21.     Subscribers that are members on a larger account that do not have access to a Billing page are instructed to contact the owner of their account. *Id.*

## III.     ZOOM FAILED TO HONOR PLAINTIFF WARREN'S REQUEST TO CANCEL HER SUBSCRIPTION.

22.     Defendant routinely fails to cancel paid Zoom subscriptions despite its promise to do so. Plaintiff's experience is informative.

23.     In May of 2022, Plaintiff Warren purchased a Standard Pro monthly subscription in

AMENDED CLASS ACTION COMPLAINT

addition to a Zoom Whiteboard subscription.

24.     In June 2022, Plaintiff Warren cancelled her two Zoom memberships via Zoom's online web portal.

25.     Despite cancelling her subscription, Plaintiff found that Zoom had not honored her cancellation request and was billed for another month.

26.     Zoom is well aware that its membership cancellation scheme deceives consumers. Hundreds of Zoom paid subscribers have complained of Zoom's failure to honor consumer cancellations. The following online consumer complaints are indicative of a broader problem:

> I've been charged for a subscription that I cancelled.  When go into my Zoom Account, it says that it's not active.[1]

> Lot of people have the same issue. Me too. Zoom makes it difficult to cancel, and are deceitful in their process. The system told me I only had a free subscription and that would not be charged. I also looked to see if Zoom had any billing/card info from me, and it did not show. But today ... I get a bill for $159 for my annual renewal.[2]

> I also cancelled and have just received an invoice followed by a reminder.[3]

> I just cancelled after several months of not using the (dis) service, not being able to cancel after following instructions provided, using the robot/chat function, trying to reach them by telephone. (Closed on weekends). Worst service I have ever had the misfortune if using. Never been so frustrated. BUT I received the cancellation email, now might      have to beat back their attempts to keep charging me.[4]

> I have twice cancelled my subscription, in August and September, twice filling in the form to say why, yet I have twice been automatically charged. How can I get my money back and how can I cancel all future attempts by Zoom to continue charging me ? Needless to say, I am so angry that I will no way be using Zoom in the future.[5]

> This same thing has happened to me. I canceled in December and January but each time I logged in, it would show as active again and I was still charged the next month. Today I was charged again for February and I again logged in and canceled. Today I called customer service and they said they will send me a confirmation email for the cancelling. We will see. Very unhappy about this.[6]

---

[1]    https://community.zoom.com/t5/Billing-Account-Management/I-cancelled-my-subscription-but-in-still-being-charged/td-p/52504 (last accessed August 26, 2023)

[2] *Id*.

[3] *Id*.

[4] *Id*.

[5]    https://community.zoom.com/t5/Billing-Account-Management/Cancelling-subscription/m-p/9252 (last accessed August 26, 2023)

[6] *Id*.

AMENDED CLASS ACTION COMPLAINT

Literally use any other video conferencing platform as this company steals your money. I cancelled my supscription multiple times yet each month Zoom still takes money from my account. I contacted them to cancel my subscription and they closed my ticket and took money from me again. I contacted their customer service team again asking for them to cancel my subscription and refund me. They keep replying by asking if I want to cancel my subscription for which I've replied I do multiple times now, demanded that they stop ripping me off immediately, and have asked a manager get in touch to discuss all the issues I'm having. They still haven't done any of it, though my account now claims I won't have money taken again next month. They're also refusing to refund me for the 5 months' subscription they illegally took from my account.[7]

I've been trying to cancel my zoom subscription for two months. Despite the information telling me I can cancel online there is no link to the Billing section on my account. I had to go through my bank and cancel the payment. Despite emailing four   times I've had no response whatsoever[8]

I have been trying to cancel my zoom subscription for MONTHS but I am still being charged by Zoom. This is the WORST online scam EVER. The system shows me as a BASIC free user but I am being billed since February 2022. I have tried to cancel my account 5-6 times without success. No one is replying to my calls or emails. SHAME ON YOU ZOOM.[9]

I CANCELLED MY MEMBERSHIP SEVERAL TIMES AND THE KEEP WITHDRAWING MONEY FROM MY ACCOUNT! I WROTE TO THEM, I FOLLOWED THEIR GUIDE, BUT THEIR SYSTEMS MAKES IT IMOSSIBLE TO UNSUBSCIRBE, THEY WONT ANSWER ANY OG MY MESSAGE!!! F******* SCAAAAMM!!!!!!! KEEP AWAY FROM THEM!!!!![10]

## IV.   ZOOM FAILED TO SEND PLAINTIFF FRAHER WRITTEN NOTICE THAT HIS ANNUAL SUBSCRIPTION WOULD AUTOMATICALLY RENEW AND HE WOULD BE CHARGED BY ZOOM.

27.     Additionally, Zoom routinely fails to provide written notice to consumers that purchase a one-year subscription that their payment method will be charged for an additional year prior to the time it is charged.

28.     In February 2022, Plaintiff Fraher purchased a one year Zoom subscription. At the time of enrollment, Plaintiff provided his PayPal account information directly to Defendant.

29.     In February 2023, Plaintiff Fraher's PayPal account was charged for a second year of

---

[7] https://www.trustpilot.com/review/zoom.us (last accessed August 26, 2023)
[8] Id.
[9] Id.
[10] Id.

AMENDED CLASS ACTION COMPLAINT

Zoom subscription services. Zoom did not inform Plaintiff in writing prior to billing him for a second year that his payment method would be charged.

30.    When Plaintiff Fraher attempted to cancel the renewed annual subscription, Plaintiff was unable to do so.  Plaintiff Fraher could not cancel his subscription via the online web portal.

31.    Instead, Plaintiff contacted Zoom and a customer service representative told Plaintiff Fraher that he could not cancel his 2023 membership because—without his knowledge or consent—he had already paid for the annual subscription and advised Plaintiff that he would have to call closer to the end of the term to cancel the annual subscription. Zoom still is charging Plaintiff Fraher for the remainder of his 2023 annual term.

## CLASS ALLEGATIONS

32.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

33.    The proposed classes ("Classes") are defined as follows:

The Cancellation Class: All persons in the United States who, within the applicable statute of limitations period, cancelled their Zoom paid subscription but were subsequently charged by Zoom ("Cancellation Class", represented by Plaintiff Warren).

The Annual Subscription Subclass: All persons who, while residing in Florida, Hawaii, Connecticut, Georgia, Illinois, Maine, Montana, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Virginia, Vermont, Washington DC, Wisconsin, within the applicable statute of limitations period, were not sent written notice that they would be charged for an annual subscription renewal ("Annual Subscription Subclass", represented by Plaintiff Fraher).

34.    Plaintiff Warren also brings her claims on behalf of a Florida subclass.

35.    Plaintiff Fraher also brings his claims on behalf of a North Carolina subclass.

36.    Excluded from the Classes are (i) Defendant and Defendant's subsidiaries and affiliates; (ii) Defendant's officers, directors, and employees; (iii) entities in which Defendant has a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

37.    Plaintiffs reserve the right to modify or amend the definitions of the proposed

Classes and to add subclasses before this Court determines whether certification is appropriate.

38.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

39.    As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Zoom's records. Zoom has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

40.    As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual class members because Zoom has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to: (i) whether Defendant engaged in the conduct alleged herein; (ii) whether Defendant's conduct was deceptive; (iii) whether Defendant's conduct caused class members harm; (iv) whether Defendant's conduct violated state consumer protection laws; (v) the appropriate measure of damages; and (vi) whether Plaintiffs and the class are entitled to declaratory relief, injunctive relief, restitution, or a combination of these.

41.    As to typicality: Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Zoom, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and absent Class members are substantially the same because the challenged practices are uniform for Plaintiffs and Class members. Accordingly, in pursuing their own self-interest in litigating the claims, Plaintiffs will also serve the interests of the Class.

42.    As to adequacy: Each Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that each Plaintiff is a paid Zoom subscriber and has suffered damages as a result of Zoom's deceptive practices. Additionally, (i) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiffs have

AMENDED CLASS ACTION COMPLAINT

retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiffs and the unnamed members of the Class; (iv) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

43.     As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

44.     As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and Class members to individually seek redress for Defendant's wrongful conduct.

45.     Additionally, the class is numerous enough to render joinder of all members or the maintenance of separate suits impracticable. Even if any individual person or group of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a single court. Further, the difficulties likely to be encountered in the management of this action as a class action are minimal.

46.     In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party or parties opposing the Class and would lead to repetitious trials of many common questions of law and fact.

47.     Plaintiffs know of no difficulty to be encountered in the management or maintenance of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiffs and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

48.     For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

49.     As stated above, Zoom has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

50.     All conditions precedent to bringing this action have been satisfied, waived, or both.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law
(Cal. Bus. & Prof. Code § 17200, et seq.)
(On Behalf of Plaintiffs and the Classes)**

51.     Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully restated here.

52.     California law applies to the class because California has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Zoom is in California, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies.

53.     Zoom's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

54.     The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

55.     The UCL imposes strict liability. Plaintiffs need not prove that Zoom intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

56.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,

1   and that unfairness is determined by weighing the reasons, justifications, and motives of the practice

2   against the gravity of the harm to the alleged victims.

3         57.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive

4   members of the public.

5         58.     A business act or practice is "unlawful" under the UCL if it violates any other law or

6   regulation.

7         59.     Zoom committed unfair and fraudulent business acts and practices in violation of Cal.

8   Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that subscribers

9   that cancel their subscription will not be subsequently charged and failing to send written notice of

10  renewals of annual subscriptions, as described herein.

11        60.     Zoom also committed unlawful business acts and practices as defined by the UCL by

12  violating multiple portions of California's Automatic Renewal Law ("ARL"), specifically Cal. Bus.

13  & Prof. Code§§ 17601(b) which required Defendant to describe the cancellation policy and annual

14  subscription renewal policy that applies to Zoom's offer, and failing to abide by that cancellation

15  policy. Zoom further failed to provide written notice of subscribers' annual renewals. Zoom also

16  violated section 17602(d)(1) of the ARL which provides "a business that allows a consumer to accept

17  an automatic renewal or continuous service offer online shall allow a consumer to terminate the

18  automatic renewal or continuous service exclusively online, at will, and without engaging any further

19  steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous

20  service immediately."

21        61.     Defendant's acts and practices offend an established public policy of truthful

22  advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous

23  activities that are substantially injurious to consumers.

24        62.     The harm to Plaintiffs and the Class outweighs the utility of Defendant's practices.

25  There is no public utility to illegal automatic renewal practices. There were reasonably available

26  alternatives to further Defendant's legitimate business interests, other than the misleading and

27  deceptive conduct described herein. Illegal auto-renewal practices only injury healthy competition

28  and harm consumers.

AMENDED CLASS ACTION COMPLAINT

63.     Defendant violated established public policy by violating the ARL. The unfairness of this practice is tethered to a legislatively declared policy (that of the FAL and ARL).

64.     Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*, as set forth more fully below.

65.     Zoom's business practices have misled Plaintiffs and the proposed Class and, unless enjoined, will continue to mislead them in the future.

66.     Plaintiffs relied on Defendant's misrepresentations in choosing to purchase a Zoom subscription.

67.     By falsely marketing its cancellation practices, Zoom deceived Plaintiffs and Class members into making purchases they otherwise would not make.

68.     By failing to provide subscribers with written notice of their annual subscription renewal, Zoom deceived Plaintiffs and Class members into renewing subscriptions they otherwise would not renew.

69.     As a direct and proximate result of Zoom's unfair, fraudulent, and unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiffs and Class members that they will be deceived. Plaintiffs desire to conduct further business with Zoom but cannot rely on Zoom's representations unless an injunction is issued.

70.     As a result of its unfair, fraudulent, and unlawful conduct, Zoom has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

71.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

72.     Plaintiffs have no adequate remedy at law in part because Zoom's conduct is continuing. Plaintiffs therefore seek an injunction on behalf of the general public to prevent Zoom

AMENDED CLASS ACTION COMPLAINT

1  from continuing to engage in the deceptive and misleading practices described herein.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, et seq.)**
**(On behalf of Plaintiffs and the Classes)**

73.     Plaintiffs hereby incorporates by reference the preceding paragraphs as if fully restated here.

74.     California law applies to the class because California has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Zoom is in California, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies and autorenewal subscription practices.

75.     This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq*. Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

76.     Defendant's sale of video conferencing services to consumers were "transactions" within the meaning of California Civil Code section 1761(e).

77.     The Zoom subscriptions purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code section 1761(a).

78.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in and did result in the sale of Zoom subscriptions: (i) "[r]epresenting that goods or services have . . . characteristics . . . that they do not have," Cal. Civ. Code § 1770(a)(5); "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9).

79.     Specifically, as alleged herein, Zoom has misrepresented and continues to misrepresent that consumers who follow its instructions for cancelling their subscriptions will indeed have their subscriptions cancelled and fails to inform subscribers in writing prior to automatically renewing annual subscriptions.

AMENDED CLASS ACTION COMPLAINT

80. Zoom has directed and does direct these misrepresentations at consumers before purchase through marketing communications.

81. Zoom has directed and does direct these misrepresentations at consumers after purchase of Zoom subscriptions when consumers desire to cancel Zoom subscriptions.

82. At no time does Zoom disclose its true cancellation practices or annual subscription practices, it repeatedly conceals and misrepresents this material information.

83. Zoom continues to violate the CLRA and continues to injure the public by misleading consumers about its cancellation policies and annual subscription practices. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent Zoom from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiffs, the Class members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

84. In accordance with California Civil Code section 1780(a), Plaintiffs and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

85. Pursuant to section 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of section 1770 of the CLRA concerning the Cancellation Class and demanded that it both rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. In its response, Defendant did not agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within thirty days of the date of written notice, as proscribed by section 1782. Therefore, seeks actual, punitive, and statutory damages, as appropriate, against Defendant concerning the Cancellation Class. With regards to the Annual Subscription Subclass, at this time, Plaintiff seeks injunctive relief only.

**THIRD CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, *et seq*.)**
**(On Behalf of Plaintiffs and the Classes)**

86. Plaintiffs hereby incorporate by reference the preceding paragraphs if fully restated

here.

87.   California law applies to the class because California has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Zoom is in California, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies and annual subscription renewals.

88.   The FAL authorizes a private right of action for any violation of Chapter 1, including the ARL. *See* Cal. Bus. & Prof. Code § 17535 (actions can be brought by "any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter"); § 17602 (ARL); *see Arnold v. Hearst Magazine Media, Inc*., at *17- 18 (S.D. Cal. Feb. 10, 2021) (explaining how the FAL authorizes a private right of action under the ARL).

89.   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

90.   Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code Section 17500.

91.   Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

92.   Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

93.   Further, Plaintiffs request an order awarding Plaintiffs and class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

94.     Additionally, Plaintiffs and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

95.     Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

96.     Plaintiffs, individually and on behalf of the Classes, assert a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiffs' statutory claims. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

97.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed subscription fees upon Plaintiffs and the members of the Classes that cancelled their subscriptions and did not receive written notice of renewals of annual subscriptions that are unfair, unconscionable, and oppressive.

98.     Defendant has unjustly retained a benefit in the form of improper membership fees to the detriment of Plaintiff and the members of the Classes.

99.     Defendant has retained this benefit through its fee maximization scheme, and such retention violates fundamental principles of justice, equity, and good conscience.

100.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Class and should be required to make restitution to Plaintiff and the members of the Classes.

**FIFTH CLAIM FOR RELIEF**
**Violation of The Florida Automatic Renewal Law**
**(Fla. Stat. § 501.165)**
**(On Behalf of Plaintiff Warren and the Florida Subclass)**

101.    Plaintiff Warren incorporates the preceding paragraphs of this Complaint as if fully set

AMENDED CLASS ACTION COMPLAINT

1  forth herein.

2      102.    Plaintiff Warren brings this cause of action in the alternative, in the event the Court

3  declines to apply California law to the nationwide class.

4      103.    Florida's Automatic Renewal Statute, Fla. Stat. § 501.65 provides "A seller that sells

5  or offers to sell any service to a consumer pursuant to a service contract the term of which is a

6  specified period of 12 months or more and that automatically renews for a specified period of more

7  than 1 month, unless the consumer cancels the contract, shall provide the consumer with written or

8  electronic notification of the automatic renewal provision. Notification shall be provided to the

9  consumer no less than 30 days or no more than 60 days before the cancellation deadline pursuant to

10  the automatic renewal provision. Such notification shall disclose clearly and conspicuously (1) That

11  unless the consumer cancels the contract the contract will automatically renew; (2) Methods by which

12  the consumer may obtain details of the automatic renewal provision and cancellation procedure,

13  whether by contacting the seller at a specified telephone number or address, by referring to the

14  contract, or by any other method.

15      104.    Plaintiff Warren and class members are Consumers within the meaning of Fla. Stat. §

16  501.65.

17      105.    Defendant is a Seller within the meaning of Fla. Stat. § 501.65.

18      106.    Defendant has failed to properly identify the methods by which Plaintiff and Class

19  members can cancel their subscriptions, as described herein, and has failed to cancel their

20  subscriptions.

21      107.    Defendant's violation of the Fla. Stat. § 501.65 harmed Plaintiff and Class members.

22  **SIXTH CLAIM FOR RELIEF**
   **Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**

23  **(Fla. Stat. § 501.201, et seq.)**
   **(On Behalf of Plaintiff Warren and the Florida Subclass)**

24

25      108.    Plaintiff Warren incorporates the preceding paragraphs of this Complaint as if fully set

26  forth herein.

27      109.    This cause of action is brought under Florida's Deceptive and Unfair Trade Practices

28  Act § 501.201, *et seq*.

AMENDED CLASS ACTION COMPLAINT

110.    The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

111.    Plaintiff and members of the Florida Subclass are "consumers" as defined by Fla. Stat. § 501.203(7).

112.    Defendant engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) by providing videoconferencing services.

113.    Defendant committed deceptive acts and practices in violation of the FDUTPA by affirmatively and knowingly misrepresenting, on its website and marketing materials, its cancellation procedures.

114.    Defendant's actions regarding its cancellation process, as described herein, are deceptive acts or practices in the conduct of business, trade, or commerce of goods.

115.    Fla. Stat. § 501.211(2) provides that any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.

116.    Defendant intentionally and knowingly engaged in these unlawful practices. Defendant intentionally misled Plaintiff and other class members into signing up for its cancellation process.

117.    Defendant's misleading and deceptive conduct regarding its cancellations is a practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

118.    Had Plaintiff known her cancellation request would not be honored, she would have elected a different videoconferencing service.

119.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Florida subclass were injured and suffered actual damages.

120.    Accordingly, Defendant is liable to Plaintiff and the Florida subclass members for damages in amounts to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**Violation of North Carolina's Automatic Renewal Law**
**(On Behalf of Plaintiff Fraher the North Carolina Subclass)**

121.    Plaintiff Fraher re-alleges and incorporates each and every allegation set forth above as if fully written herein.

122.    Pursuant to N.C.G.S. § 75-41, any person engaged in commerce that sells, leases, or offers to sell or lease, any products or services to a consumer pursuant to a contract, where the contract automatically renews unless the consumer cancels the contract, shall do all of the following: (1) Disclose the automatic renewal clause clearly and conspicuously in the contract or contract offer; (2) Disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services; (3) For any automatic renewal exceeding 60 days, provide written notice to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date; and (4) If the terms of the contract will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print.

123.    As described above, Plaintiff Fraher and Class members have been enrolled and charged for annual subscriptions that violates the notice requirement of N.C.G.S. § 75-41(3).

124.    Defendant is not afforded any of the protections of N.C.G.S. § 75-41(c) as, upon information and belief, Defendant cannot demonstrate that it: (1) has established and implemented written procedures to comply with N.C.G.S. § 75-41 and enforces compliance with the procedures; (2) any failure to comply with N.C.G.S. § 75-41 is the result of error; and (3) where an error has caused the failure to comply with N.C.G.S. § 75-41, Defendant provides a full refund or credit for all amounts billed to or paid by Plaintiff and Class members from the date of the renewal until the date of the termination of the contract, or the date of the subsequent notice of renewal, whichever occurs first.

125.    Plaintiff Fraher and Class members have been harmed in the amounts that they

1    otherwise would not have paid.

2
                                **SEVENTH CLAIM FOR RELIEF**
3    **Alternative Cause of Action for Violation Of Certain State Consumer Protection Laws**
     **Where Class Members Reside, Where Those State Laws Do Not Materially Conflict With the**
4                          **Florida Automatic Renewal Laws**
               **(On Behalf of Plaintiff Fraher and the Annual Subscription Subclass)**
5

6         126.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully

7    written herein.

8         127.    Plaintiff Fraher states this alternative cause of action under the laws of the states of

9    residence of class members where these states' automatic renewal laws do not materially differ and

10   are not in actual conflict with the laws of Florida.  Though this Count is pled under these various

11   state laws, Plaintiff Fraher asserts that, under choice of law rules, the absence of an actual conflict

12   with Florida law requires the ultimate application of Florida law.

13        128.    Defendant failed to provide written notice prior to charging consumers for their annual

14   subscription in violation of the following state automatic renewal laws:

15
          a.   Connecticut, Conn. Gen. Stat. Ann. § 42-126b, *et seq*.
16
          b.   Georgia, O.C.G.A. §§ 13-12-1, *et seq*.
17
          c.   Hawaii, HRS § 481-9.5(b), *et seq*.
18
          d.   Illinois, 815 ILCS 601/1, *et seq*.
19
          e.   Maine, 10 M.R.S.A. §§ 1210-C, *et seq*.
20
          f.   Montana, Mont. Admin. R. 38.5.6004(9), (10), *et seq*.
21
          g.   New Mexico, N.M. Admin. Code 12.2.11, *et seq*.
22
          h.   New York, N.Y. Gen. Oblig. Law § 5-903, *et seq*, and N.Y. Gen. Bus. Law §§ 527, *et*
23
               *seq*.
24
          i.   North Carolina, N.C.G.S. § 75-41, *et seq*.
25
          j.   North Dakota, N.D.C.C. §§ 51-37-01, *et seq*.
26
          k.   Oregon, Or. Rev. Stat. §§ 646A.292, *et seq*.
27
          l.   South Carolina, S.C. Code Ann. § 44-79-60*, et seq*.
28

1        m.  South Dakota, SDCL 49-31-116, *et seq.*

2        n.  Tennessee, T.C.A. § 47–18–133, *et seq.*

3        o.  Utah, Utah Code §§ 15-10-201 and 15-10-202, *et seq.*

4        p.  Vermont, 9 V.S.A. § 2454a, *et seq.*

5        q.  Virginia, Va. Code Ann. §§ 59.1-207.45, *et seq.*

6        r.  Washington D.C., D.C. Code § 28A-201, *et seq.*

7        s.  Wisconsin, Wis. Stat. § 134.49, *et seq.*

8     129.    These violations of automatic renewal laws caused damages to Plaintiffs and members

9 of the subclass.

10                            **<u>PRAYER FOR RELIEF</u>**

11     For the foregoing reasons, Plaintiffs, individually and on behalf of the Classes, pray for the

12 following relief:

13     1.     Certification for this matter to proceed as a class action on behalf of the Classes

14 pursuant to Rule 23;

15     2.     Appointment of the Plaintiffs as representatives of the Classes;

16     3.     Appointment of counsel for Plaintiffs as Lead Counsel for the Class;

17     4.     A finding that Zoom's practices are in violation of state consumer protection statutes;

18     5.     Restitution of all amounts improperly paid to Zoom by Plaintiffs and the members of

19 the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

20     6.     Actual damages in an amount according to proof;

21     7.     Statutory damages as allowed by law;

22     8.     An award of pre-judgment and post-judgment interest at the maximum rate permitted

23 by applicable law;

24     9.     An award of costs and attorneys' fees under the common fund doctrine and all other

25 applicable law; and

26     10.    Declaratory and injunctive relief on behalf of the general public.

27     11.    Plaintiffs also request such other relief as this Court deems just and proper.

28

AMENDED CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class

3  Action Complaint that are so triable.

4  Dated: January 4, 2024           **KALIELGOLD PLLC**

5

6                     By: */s/ Sophia Goren Gold*

7                         Jeffrey D. Kaliel
                           Sophia Goren Gold

8                     *Attorneys for Plaintiffs and the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT